UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
UNITED STATES OF AMERICA,                                               :
                                                                        :
v.                                                                      :   13 Cr. 461 (JMF)
                                                                        :
SANG BIN LEE et al.,                                                    :   OPINION AND ORDER
                                                                        :
                          Defendants.                                   :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

The Superseding Indictment in this case charges five defendants, including Sang Bin Lee and Ki Hwan Chung, with participating in a conspiracy to distribute a controlled substance — namely, cocaine base or "crack" cocaine. (Docket No. 19). Lee and Chung now move to suppress evidence obtained pursuant to a court-authorized wiretap of their cellphones on the grounds that (1) the wiretap application failed to establish both probable cause and "necessity," as required by Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2518(1)(c) & (3)(c); and (2) the Government failed to minimize interceptions as required by Title III. For the reasons stated below, Defendants' motions are DENIED.

## PROBABLE CAUSE AND NECESSITY

As noted, Lee and Chung first challenge the wiretap evidence on the ground that the Government failed to establish either probable cause or necessity. (Lee Mem. of Law ("Lee Mem.") (Docket No. 34) 3-9; Chung Mem. of Law ("Chung Mem.") (Docket No. 40) 3-10).

**A.    Applicable Law**

Under Title III, a court may authorize a wiretap based upon a showing of probable cause that (1) an individual is committing, has committed, or is about to commit, a crime;

(2) communications concerning that crime will be obtained through the wiretap; and (3) the telephone to be wiretapped is being used for criminal purposes or is about to be used or owned by the target of the wiretap. *See* 18 U.S.C. § 2518(3); *see also, e.g.*, *United States v. Yannotti*, 541 F.3d 112, 124 (2d Cir. 2008). Probable cause requires that the "totality of the circumstances" reflect a "fair probability that . . . evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also, e.g.*, *United States v. Diaz*, 176 F.3d 52, 110 (2d Cir. 1999). The issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that . . . evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

In addition to finding probable cause, to authorize a wiretap under Title III, a judicial officer must make a finding that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Accordingly, Title III requires each application for a wiretap to include a "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c).[1] This "necessity" requirement is "designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). As the Supreme Court has explained, wiretaps are "not to be routinely employed as the initial step in criminal investigation. Rather, the applicant must state and the court must find that normal investigative procedures

---

[1] "Normal" investigative procedures "include (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants," as well as "pen registers and trap and trace devices." *United States v. Cline*, 349 F.3d 1276, 1280 (10th Cir. 2003) (internal quotation marks omitted).

have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Giordano*, 416 U.S. 505, 515 (1974).

Courts, however, must take a "common sense approach" to the necessity requirement. *United States v. Concepcion*, 579 F.3d 214, 218 (2d Cir. 2009); *see also, e.g.*, *United States v. Labate*, No. S100 Cr. 632 (WHP), 2001 WL 533714, at *13 (S.D.N.Y. May 18, 2001) (stating that the necessity requirement is not "an insurmountable hurdle and only requires that the Government demonstrate that normal investigative techniques would prove difficult" (internal quotation marks omitted)). In particular, although "generalized and conclusory statements that the other investigative procedures would prove unsuccessful" are not sufficient, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance." *Concepcion*, 579 F.3d at 218 (internal quotation marks omitted); *United States v. Young*, 822 F.2d 1234, 1237 (2d Cir. 1987) (stating that there is no requirement under Title III that "that any particular investigative procedures be exhausted before a wiretap may be authorized" (internal quotation marks omitted)). Moreover, "[m]erely because a normal investigative technique is theoretically possible, it does not follow that it is likely. What [Title III] envisions is that the showing be tested in a practical and commonsense fashion." *Concepcion*, 579 F.3d at 218 (quoting S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2190)) (internal quotation marks omitted). At bottom, Title III "only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Id.* (quoting *Diaz*, 176 F.3d at 111) (internal quotation mark omitted).

Applying these principles, the Court of Appeals has noted that wiretapping "is particularly appropriate when the telephone is routinely relied on to conduct the criminal

enterprise under investigation." *United States v. Fleishman*, No. 11 Cr. 32 (JSR), 2011 WL 4000987, at *3 (S.D.N.Y. Aug. 31, 2011) (quoting *United States v. Steinberg*, 525 F.2d 1126, 1131 (2d Cir. 1975) ("[T]he very scope of the operations described in the affidavit made it highly likely that numerous narcotics-related communications would take place in the future.")). Further, courts have acknowledged that "the need for a wiretap may be compelling" in conspiracy cases, as "the clandestine nature of alleged conspiracies makes them relatively less susceptible to normal investigative techniques." *United States v. Kazarian*, No. 10 Cr. 895 (PGG), 2012 WL 1810214, at *2 (S.D.N.Y. May 18, 2012) (quoting *United States v. Feola*, 651 F. Supp. 1068, 1105 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989)) (internal quotation marks omitted). Thus, the Court of Appeals and courts in this Circuit have repeatedly "approved of wiretaps in complex and sprawling criminal cases involving large conspiracies." *Concepcion*, 579 F.3d at 218 (citing *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990), *overruled on other grounds as recognized by United States v. Marcus*, 628 F.3d 36, 41 (2d Cir. 2010)); *see also, e.g.*, *United States v. Rodriguez-Perez*, No. 10 Cr. 905 (LTS), 2012 WL 3578721, at *5 (S.D.N.Y. Aug. 16, 2012) (approving a wiretap in a marijuana conspiracy and money laundering case involving more than fifty defendants); *Kazarian*, 2012 WL 1810214, at *13 (approving a wiretap in "an investigation of a complex and far-flung criminal enterprise").

Significantly, a defendant seeking to suppress an authorized wiretap "bears a significant burden." *Rodriguez-Perez*, 2012 WL 3578721, at *6. In particular, once a judge has made the requisite probable cause and necessity determinations, any court reviewing those determinations must grant "considerable deference" to the authorizing judge. *Concepcion*, 579 F.3d at 217 & n.1; *accord Yannotti*, 541 F.3d at 124. More specifically, the reviewing court's role is limited to "decid[ing] if the facts set forth in the application were minimally adequate to support the

determination that was made." *Yannotti*, 541 F.3d at 124 (quoting *United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997)) (internal quotation mark omitted); *accord Concepcion*, 579 F.3d at 217; *cf. United States v. Tortorello*, 480 F.2d 764, 783 (2d Cir. 1973) ("A judge presumably will scrutinize any application and will scrupulously impose the restrictions required by statute.").

**B.     Discussion**

Measured against these standards, Defendants' probable cause and necessity challenges are easily rejected.  First, Chung's contention that the Government failed to establish probable cause with respect to him and his use of the relevant cellphone (referenced in the wiretap application and here as "Target Cellphone-5") is frivolous.  Among other things, the affidavit submitted in support of the initial wiretap application in August 2012 (the only application challenged directly by Defendants) alleged that:

- Chung and a confidential source ("CS-1"), whose information had been proved reliable and corroborated, had a preexisting relationship "involv[ing] illicit activities, including but not limited to the purchase and sale of cocaine base" (Gov't Ex. A  ("Affidavit") at 11, 22-23);

- on or about January 11, 2012, CS-1 met with Chung and another Defendant, Andrew Chang, in Flushing, Queens, and purchased $2,400 worth of cocaine base from the two Defendants (*id.* at 15-16);

- on or about April 3, 2012, CS-1 placed a series of consensually recorded telephone calls to Chung on Target Cellphone-5, leaving messages about purchasing "a 'rock' worth $2,000" and directing Chung to pick CS-1 up at a specific location in Manhattan.  Shortly thereafter, Chung arrived at that location and picked CS-1 up.  (*Id.* at 22-23);

- in the meeting that followed, which was consensually recorded by CS-1, Chung and CS-1 discussed CS-1's interest in "product" (that is, cocaine base), after which Chung used Target Cellphone-5 to call someone Chung identified as a "runner" for Lee.  Chung asked that person if he had "product available" and indicated that Chung would like to buy up to $2,000 worth.  (*Id.* at 24-25);

- on or about March 22, 2012, Chung told CS-1 that he would contact two of his suppliers to obtain cocaine base for CS-1 and then used Target Cellphone-5 to call telephone numbers associated with narcotics traffickers (including numbers associated with other Defendants in this case).  (*Id.* at 43); and

5

- toll records revealed that Target Cellphone-5 had been used to communicate with several other telephone numbers associated with narcotics traffickers. (*Id.* at 40-44).

These allegations plainly sufficed to establish probable cause that Chung was committing, had committed, or was about to commit, the crime of narcotics trafficking; that Chung was using Target Cellphone-5 to commit that crime; and that communications concerning Chung's narcotics trafficking would be obtained through a wiretap. More to the point, they were certainly "minimally adequate to support the determination" made by the judge who authorized the wiretap that there was probable cause. *Yannotti*, 541 F.3d at 124.

Lee's assertion that the Government failed to establish probable cause with respect to him and his use of the relevant cellphone (referenced in the wiretap application and here as "Target Cellphone-6") is only marginally more substantial. Among other things, the Affidavit alleged that:

- Chang told a law enforcement officer operating in an undercover capacity (the "UC") that his cocaine base was cooked by a man named "Sang-bin," who was an expert who had been in the business for more than twenty years (Affidavit at 17);

- Chang told the UC that Lee bought about one ounce of cocaine base from Chang almost every day, which he then cooked and sold (*id.*);

- on or about March 30, 2012, Chang met with the UC regarding the purchase of cocaine base, during which Chang told the UC that he would contact his supplier. Thereafter, Chang left and told the UC that he would contact the UC later that evening and would return with his friend "Sang bin." Before he left, however, Chang conducted two telephone conversations with someone using Target Cellphone-6, during one of which Chang told the person that he would be there in five minutes. Later the same night, agents observed Chang driving with a man believed to be Lee in a minivan that was registered to "Yun Jung Lee" at address that, in law enforcement databases, was listed as Lee's home address. (*Id.* at 22);

- in a recorded conversation with CS-1, Chung identified Lee as a "veteran" in the field who had been cooking cocaine base at home and another man as a "runner" who worked for Lee — that is, a person responsible for transporting narcotics (*id.* at 24, 26, 45);

6

- another confidential source ("CS-2"), who was "knowledgeable about narcotics transactions in the New York Metropolitan area" and whose information had been proved reliable and corroborated, identified Lee as having been involved in narcotics trafficking since as early as in or about 2009 and identified Target Cellphone-6 as a telephone that had been used and/or possessed by Lee since at least February 2012 (*id.* at 33); and

- toll records revealed that Target Cellphone-6 had been in "constant communication" with various telephones associated with other Defendants in this case or suspected narcotics traffickers (*id.* at 34, 44-46).

In light of these allegations, the judge who authorized the wiretap plainly "had a substantial basis for the finding of probable cause" as to Lee and Target Cellphone-6. *Concepcion*, 579 F.3d at 217 n.1. The fact that evidence of Lee's use of Target Cellphone-6 was more circumstantial in nature is immaterial, as "the law draws no distinction" — even at trial — "between direct and circumstantial evidence in requiring the government to carry its burden of proof." *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005).

Defendants' challenge to the Government's showing of necessity also falls short. As an initial matter, this case involves precisely "the type of large criminal drug conspiracy that often requires the aid of a wiretap." *Concepcion*, 579 F.3d at 219. The Government's investigation targeted a "loosely connected group of Korean individuals" that were believed to distribute cocaine base and other drugs. (Affidavit at 13). The investigation revealed that at least one member of the organization — namely, Lee — had been involved in narcotics trafficking for more than twenty years, a longevity that another member of the organization attributed to Lee's care not to meet with anyone who had ever been arrested. (*Id.* at 20). By its nature, therefore, the organization was a reasonably "large scale operation which could not be adequately surveilled by traditional investigative methods." *Torres*, 901 F.2d at 232; *see also, e.g.*, *United States v. Mitchell*, No. 08-CR-6020L, 2010 WL 55927, at *4 (W.D.N.Y. Jan. 5, 2010) (approving wiretap in a case involving "a large scale narcotics trafficking operation which could

not be adequately investigated by traditional methods"); *United States v. Bernardino*, 07 Cr. 151 (PKC), 2007 WL 4462176, at *2 (S.D.N.Y. Dec. 17, 2007) (approving wiretap in a case involving a "large-scale cocaine-trafficking network").

Second, and in any event, the Affidavit made more than a sufficient showing that other investigative techniques had been tried and either failed or were likely to fail or be too dangerous. Among other things, the affiant (a Special Agent with the Federal Bureau of Investigation) explained — for reasons specific to this case — that while the investigation had made use of an undercover officer and confidential informants, there was no reasonable expectation that an undercover officer or confidential informant could be used to determine the full scope of the organization's operations, meet and identify all of its members, or learn details about its sources of supply. (Affidavit at 49-51). He further explained — again, for reasons specific to this case — that, while the investigation had made use of physical surveillance, such techniques had only limited utility. (*Id.* at 51-53). And he also addressed the benefits, or lack thereof, of pole cameras (*id.* at 53), geolocation devices and vehicle trackers (*id.* at 53, 60), telephone records and pen registers (*id.* at 54), witness interviews and grand jury subpoenas (*id.* at 56, 58), search warrants (*id.* at 57), arrests (*id.* at 57-58), trash searches (*id.* at 59-60), and mail covers (*id.* at 60-61). In short, the Affidavit made clear that wiretapping was far from the first step in the investigation, and included a lot more than "generalized and conclusory statements" or "skimpy" details about the traditional techniques tried and why they failed or were likely to fail. *Concepcion*, 579 F.3d at 215. At a minimum, the facts set forth in the application were plainly "minimally adequate to support the determination that was made" by the authorizing judicial officer. *Yannotti*, 541 F.3d at 124.

In arguing otherwise, Lee does little more than assert in conclusory fashion that, "if the government had taken more time and been more resourceful, it would have been more successful." (Lee Mem. 9).[2] But this argument is built on the erroneous premise that the Government sought and obtained the wiretap in April 2012, only three months after the investigation began. In fact, the Government did not seek or obtain the wiretap until August 2012, seven months after the investigation began in earnest. (Further, the Affidavit makes clear that the Government's investigation made use of information dating back to 2011 and even earlier.) Moreover, the Second Circuit has made clear that no "particular investigative procedures [must] be exhausted before a wiretap may be authorized." *Young*, 822 F.2d at 1237 (internal quotation marks omitted). And mere "speculation that alternative strategies might have been effective" is not a valid basis for suppression. *United States v. Rajaratnam*, No. 09 Cr. 1184, 2010 WL 4867402, at *23 (S.D.N.Y. Nov. 24, 2010); *see also, e.g.*, *United States v. Shipp*, 578 F. Supp. 980, 989 (S.D.N.Y. 1984) (Weinfeld, J.) ("Monday morning quarterbacking as to what investigative techniques the agents should have employed in addition to what they did employ is utterly unrealistic, if not naive."), *aff'd sub nom. United States v. Wilkinson*, 754 F.2d 1427 (2d Cir. 1985).[3]

---

[2] Chung does even less: Although he discusses the law with respect to necessity, he includes no argument whatsoever with respect to how the Affidavit in this case fell short of legal requirements. Although Chung's challenge to necessity could be rejected on that basis alone, there is no need to do so because it fails for the same reasons that Lee's challenge fails.

[3] It should be noted that, although neither Defendant appears to request that the Court hold an evidentiary on his motion to suppress the wiretap, there is no basis to do so. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to an evidentiary hearing only if he or she makes "a substantial preliminary showing" of an intentional or reckless false statement or omission of material fact and that the allegedly false statement or omission was "necessary" to the finding of probable cause or necessity. *Id.* at 155-56; *see also United States v. Zagari*, 111 F.3d 307, 321-22 (2d Cir. 1997) (applying *Franks* to Title III applications). The standard is "a high one," *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), and neither of the Defendants has even come close to meeting it here.

# MINIMIZATION

Defendants' last challenge to the wiretap evidence is based on the claim that the agents conducting surveillance failed in their duty to "minimize" the interception of communications not otherwise subject to interception.

## A. Applicable Law

Title III requires that eavesdropping "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). To that end, "[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, [and] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." *Id.* The requirement "'does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations.'" *United States v. Salas*, No. 07 Cr. 557 (JGK), 2008 WL 4840872, at *6 (S.D.N.Y. Nov. 5, 2008) (quoting *Scott v. United States*, 436 U.S. 128, 140 (1978)). Compliance with the requirement "is determined by an analysis of the reasonableness of the surveilling agents' conduct based on the totality of circumstances." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 477 (S.D.N.Y. 2013) (citing *Scott*, 436 U.S. at 139).

The Government has the burden of making a *prima facie* showing of compliance with the minimization requirement. *See id.* (citing *United States v. Rizzo*, 491 F.2d 215, 217 n.7 (2d Cir. 1974)). If the Government makes that showing, "the burden shifts to the defendant to show that, despite a good faith compliance with the minimization requirements, a substantial number of non-pertinent conversations have been intercepted unreasonably." *Rajaratnam*, 2010 WL 4867402, at *27 (internal quotation marks and citations omitted). The factors to be considered in

evaluating whether the defendant has made that showing include: (1) the length of non-pertinent calls; (2) whether the non-pertinent calls were "one-time" calls; (3) the ambiguous nature of the conversations or pattern of calls; (4) whether the investigated conduct involved a widespread conspiracy; (5) the public or private nature of the target phone; and (6) the stage of the surveillance. *See Scott*, 436 U.S. at 140-42. Significantly, the percentage of calls minimized alone "is not dispositive of whether the statutory minimization requirement was satisfied." *Salas*, 2008 WL 4840872, at *7 (citing *Scott*, 436 U.S. at 132); *see also Scott*, 436 U.S. at 140 ("[T]he percentage of nonpertinent calls [may be] relatively high and yet their interception [may] still [be] reasonable.").

**B.     Discussion**

Applying these standards here, Defendants' challenge is without merit. As an initial matter, the Government has easily satisfied its burden to establish a *prima facie* case of compliance. Among other things, it is undisputed that: a prosecutor provided written and oral minimization instructions to the agents and translators involved in the surveillance and supervised the surveillance; the minimization instructions were posted, along with the Court's orders authorizing the surveillance, in the wire room; the agents and translators conducting the surveillance maintained contemporaneous monitoring logs (in the form of "line sheets"); and the Government submitted periodic reports to the Court. (Gov't's Mem. of Law ("Gov't Mem.") (Docket No. 43) 21-23 (citing Gov't Ex. D)). By taking these steps to "to increase likelihood of compliance with § 2518(5)," the Government has met its *prima facie* burden. *Salas*, 2008 WL 4840872, at *8; *see Zemlyansky*, 945 F. Supp. 2d at 477-78 (finding, on similar facts, that the Government had met its *prima facie* burden).

The burden thus shifts to Defendants to show that a substantial number of non-pertinent conversations have been intercepted unreasonably. Chung does not even attempt to carry this burden. Lee does, but only by asserting that the Government intercepted 1,474 calls on his cellphone, of which calls "[o]nly a handful" were terminated and "at most, approximately 270" have been identified by the Government as pertinent. (Lee Mem. 10). As noted above, however, the percentage of calls minimized, by itself, "is not dispositive of whether the statutory minimization requirement was satisfied." *Salas*, 2008 WL 4840872, at \*7.

Additionally, Lee's "numerical argument proves nothing," *Kazarian*, 2012 WL 1810214, at \*16, as he ignores the fact that the vast majority of the non-pertinent calls (1) lasted approximately thirty seconds or less; (2) involved calls to voicemail where no message was left; or (3) involved calls in which "no voice audio" was "intercepted." (Gov't Ex. C). *See also Zemlyansky*, 945 F. Supp. 2d at 478-79 & n.21 ("[T]here is a strong presumption that calls under two minutes need not be minimized . . . ." (citing cases)). Finally, Lee's challenge also falls short because he fails to identify even one specific communication that was improperly monitored — despite full access to the ten-day reports, line sheets, and other materials necessary to make such a challenge. *See Kazarian*, 2012 WL 1810214, at \*17 ("Failure to provide the required specificity warrants rejection of a defendant's minimization objections."); *United States v. Estrada*, S294 Cr. 186 (MGC), 1995 WL 577757, at \*7 (S.D.N.Y. 1995) ("Despite their possession of the ten-day reports and line sheets, defendants do not identify any specific violations. Accordingly, the motion to suppress for failure to minimize is denied."), *aff'd*, 164 F.3d 620 (2d Cir. 1998); *United States v. McGuinness*, 764 F. Supp. 888, 900 (S.D.N.Y. 1991) (denying a motion to suppress on minimization grounds without a hearing where the defendant

did not "indicate which of the calls he contends were 'properly minimized' and which were not").

## CONCLUSION

For the reasons stated above, Lee's and Chung's motions are DENIED.

The Government is directed to promptly file the Exhibits to its Memorandum of Law on ECF. *See, e.g.*, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (discussing the presumption in favor of access to judicial documents).

The Clerk of Court is directed to terminate Docket Nos. 32 and 38.

SO ORDERED.

Dated: January 15, 2014
       New York, New York

                                                JESSE M. FURMAN
                                                United States District Judge